Robert A. Weikert (Bar No. 121146)
rweikert@nixonpeabody.com
Andrew H. Winetroub (Bar No. 291847)
awinetroub@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 32nd Floor
San Francisco, California 94111-3600
Tel: (415) 984-8200
Fax: (866) 294-8300

David L. May (*Pro Hac Vice Pending*)
dmay@nixonpeabody.com
Jennette W. Psihoules (*Pro Hac Vice Pending*)
jpsihoules@nixonpeabody.com
NIXON PEABODY LLP
799 9th Street NW
Washington, DC 20001-4501
Tel: (202) 585-8000
Fax: (202) 585-8080

*Attorneys for Plaintiff*
BANDAI NAMCO Entertainment America Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BANDAI NAMCO ENTERTAINMENT AMERICA INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ATGAMES HOLDINGS LTD.; and DOES 1 through 50,<br><br>Defendants. | Case No.: 5:19-cv-05898-VC<br><br>**BANDAI NAMCO ENTERTAINMENT AMERICA INC.'S NOTICE OF *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED**<br><br>Date:<br>Time:<br>Place:  Courtroom 4, 17th Floor<br>Judge: Judge Vince Chhabria |

**TO DEFENDANT ATGAMES HOLDINGS LTD. AND ITS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that at a time to be set by the Court, in the courtroom of Judge Vince Chhabria of the United States District Court for the Northern District of California, Plaintiff BANDAI NAMCO Entertainment America Inc. ("**BNEA**") shall and hereby does apply to this Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Rule 65-1, for a temporary restraining order ("**TRO**"), as well as an order to show cause why a preliminary injunction should not issue, enjoining and restraining Defendant AtGames Holdings Ltd. ("**AtGames**"), including its owners, officers, directors, employees, agents, servants, representatives, affiliates, related companies, and all other persons, firms, or corporations acting in active concert or participation with it, from any and all development, production, promotion and/or distribution of any products, including but not limited to the Ms. PAC-MAN "Legends Compact" home arcade cabinet, that bear, incorporate or contain any of BNEA's Ms. PAC-MAN Property (as defined herein), or any colorable imitation thereof or any substantially or confusingly similar intellectual property (the "**Unauthorized Ms. PAC-MAN Products**").

BNEA specifically requests that the TRO issue for a period of not less than twenty-eight (28) days. If the TRO is not issued, BNEA moves, upon good cause shown, for expedited briefing and an expedited hearing on its request for an order to show cause as to why a preliminary injunction should not be granted as soon as possible and by no later than October 31, 2019.

This Application is made on the grounds that: (1) BNEA will be irreparably injured if AtGames is not enjoined from using, producing, distributing, and/or promoting the Unauthorized Ms. PAC-MAN Products; (2) BNEA is likely to succeed on the merits of the claims it has asserted in its Complaint [Dkt. No. 1]; (3) the balance of hardships tips strongly in favor of BNEA; and (4) the public interest overwhelmingly supports the issuance of a temporary restraining order and a preliminary injunction.

This Application is based on the accompanying Memorandum of Points and Authorities; the supporting declarations and exhibits of Patrick Lundell, Melani Windham, Hideaki Irie, Shuhei Hokari, Robert A. Weikert, David L. May, Jennette Psihoules, Tony Peake and such other written or oral argument as may be presented at or before the time this Application is taken under submission by the Court.

Notice of this Application has been given to counsel for AtGames by the undersigned by letter on October 8, 2019, via phone call on October 9, 2019, and by email dated October 11, 2019. Declaration of Robert A. Weikert ¶¶ 5-6, 9, Exs. D, G. Pursuant to Local Rule 65-1, a true and correct copy of the Complaint is attached as Exhibit H to Robert A. Weikert's Declaration in Support of this Application. Notice of the hearing location, date, and time will be given to AtGames when that information is set. Delivery of this Application, and all supporting papers, to AtGames' counsel will be made upon the filing of this Application.

DATED:  October 17, 2019

> Respectfully submitted,
>
> **NIXON PEABODY LLP**
>
> By:   */s/ Robert A. Weikert*
>
> Robert A. Weikert (Bar No. 121146)
> rweikert@nixonpeabody.com
> Andrew H. Winetroub (Bar No. 291847)
> awinetroub@nixonpeabody.com
> NIXON PEABODY LLP
> One Embarcadero Center, 32nd Floor
> San Francisco, California 94111-3600
>
> David L. May (*Pro Hac Vice Pending*)
> dmay@nixonpeabody.com
> Jennette W. Psihoules (*Pro Hac Vice Pending*)
> jpsihoules@nixonpeabody.com
> NIXON PEABODY LLP
> 799 9th Street NW
> Washington, DC 20001-4501
>
> *Attorneys for Plaintiff*
> **BANDAI NAMCO ENTERTAINMENT
> AMERICA INC.**

**Table Of Contents**

I.      INTRODUCTION ................................................................................................. 1

II.     RELEVANT PROCEDURAL BACKGROUND ................................................ 2

III.    RELEVANT FACTUAL BACKGROUND......................................................... 2

IV.     LEGAL STANDARD........................................................................................... 5

V.      IMMEDIATE RELIEF IS NECESSARY AND A TRO AND PRELIMINARY
        INJUNCTION ARE APPROPRIATE.................................................................. 6

        a.      BNEA Is Likely To Succeed On The Merits Of Its Claims ................................. 6

                i.      Trademark Infringement under the Lanham Act ........................................ 6

                ii.     Counterfeiting under the Lanham Act ........................................................ 9

                iii.    Copyright Infringement under the Copyright Act ..................................... 9

        b.      BNEA Will Be Irreparably Injured If Injunctive Relief Is Not Granted ............. 11

        c.      The Balance of Hardships Strongly Favors BNEA ............................................. 13

        d.      An Injunction Would Advance the Public Interest ............................................. 14

VI.     CONCLUSION................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alliance for the Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011) ...................................................................6

*AMF Inc. v. Sleekcraft Boats,*
599 F.2d 341 (9th Cir. 1979), abrogated in part on other grounds by *Mattel,*
*Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) ......................................7, 8, 9

*Brookfield Communications, Inc. v. West Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 1999) ...............................................................6, 7

*Century 21 Real Estate Corp. v. Sandlin,*
846 F.2d 1175 (9th Cir. 1988) ...................................................................8

*Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*,
843 F.2d 600 (1st Cir. 1988) ...................................................................13

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
224 F. Supp.3d 957 (C.D. Cal. 2016) ...................................................................14

*Feist Publications v. Rural Tel. Serv. Co., Inc.*,
499 U.S. 340 (1991) ...................................................................9

*Freedom Holdings, Inc. v. Spitzer*,
408 F.3d 112 (2nd Cir. 2005) ...................................................................11

*Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*,
736 F.3d 1239 (9th Cir. 2013) ...................................................................12

*Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.*,
559 F.3d 985 (9th Cir. 2009) ...................................................................14

*Jack in the Box Inc. v. Mehta,*
2016 WL 3401988 (N.D. Cal. June 21, 2016) ...................................................................7

*League of Wilderness Defenders/Blue Mountains Biodiversity Project v.*
*Connaughton*,
752 F.3d 755 (9th Cir. 2014) ...................................................................14

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
658 F.3d 936 (9th Cir. 2011) ...................................................................9

*M.R. v. Dreyfus*,
    697 F.3d 706 (9th Cir. 2012) ...............................................................11

*Michigan v. United States Army Corp. of Engineers*,
    667 F.3d 765 (7th Cir. 2011) ...............................................................11

*Narell v. Freeman*,
    872 F.2d 907 (9th Cir. 1989) ...............................................................10

*NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P.*,
    788 F. Supp. 2d 1111 (C.D. Cal. 2011) ..................................................5

*Optinrealbig.com, LLC v. Ironport Systems, Inc.*,
    323 F.Supp.2d 1037 (N.D. Cal. 2004) ...................................................11

*Rearden LLC v. Rearden Commerce, Inc.*,
    683 F.3d 1190 (9th Cir. 2012) ...............................................................7

*Rolex Watch U.S.A., Inc. v. Watch Empire LLC*,
    2015 WL 9690322 (C.D. Cal. Sep. 29, 2015).........................................7

*Scotts Co. v. United Indus. Corp.*,
    315 F.3d 264 (4th Cir. 2002) ...............................................................13

*Silvers v. Sony Pictures Entm't, Inc.*,
    402 F.3d 881 (9th Cir. 2005) .................................................................9

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) ...............................................................6

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*,
    240 F.3d 832 (9th Cir. 2001) ..........................................................5, 12

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) ...............................................................10

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ...............................................................10

*Triad Systems Corp. v. Southeastern Exp. Co.*,
    64 F.3d 1330 (9th Cir. 1995), *superseded by statute on other grounds* ...................................13

*United Healthcare Ins. Co. v. Advance-PCS*,
    316 F.3d 737 (8th Cir. 2002) ...............................................................11

**Federal Statutes**

15 U.S.C. § 1114(1)(a)..........................................................................6

15 U.S.C. § 1115(b) ...................................................................................................7

15 U.S.C. § 1127 .......................................................................................................9

17 U.S.C. § 117(c) ...................................................................................................13

17 U.S.C. § 201(d)(2) ................................................................................................9

17 U.S.C. § 501(a) ...................................................................................................10

**State Statutes**

California Business and Professions Code § 17200 .......................................................6

California Business and Professions Code § 17500 .......................................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff BANDAI NAMCO Entertainment America Inc. ("**BNEA**") has sought from Defendant AtGames Holdings Ltd. ("**AtGames**") a narrow, straightforward agreement, in the form of a publicly-filed stipulated injunction that can be entered by the Court and carries the penalty of contempt, that AtGames, including its owners, officers, directors, employees, agents, servants, representatives, affiliates, related companies, and all other persons, firms, or corporations acting in active concert or participation with it,[1] cease all unauthorized exploitation of BNEA's exclusive intellectual property rights in and to its Ms. PAC-MAN Property.[2]  AtGames has refused to agree to BNEA's request.[3]  Indeed, AtGames has repeatedly sought and been denied a license to exploit such rights from BNEA, and has thereby tacitly acknowledged both the substantial value of those rights and that it has never been granted any such license.  BNEA previously authorized AtGames to exploit certain rights in *other* licensed properties—which resulted in significant damage to BNEA's reputation and goodwill, as discussed below.  BNEA's repeated unsuccessful efforts to discourage AtGames' unlawful and willfully infringing conduct has left BNEA no choice but to seek injunctive relief from this Court or suffer imminent and irreparable harm.

---

[1] BNEA requires the broad injunction set forth in the Proposed Order filed herewith as there appear to be a number of AtGames entities and related companies, including offshore companies in the British Virgin Islands, for what appear to be obfuscation and other purposes.  Discovery will hopefully shed light on these issues, and if additional defendants need to be named in place of DOES they will be appropriately joined.

[2] Consistent with the definition set forth in the Complaint [Dkt. No. 1], as used herein "**Ms. PAC-MAN Property**" shall mean any and all intellectual property rights related to the Ms. PAC-MAN franchise, including without limitation, all rights to the game, characters, designs, likenesses, visual representations, copyrights, character names, trademarks, and any other rights contained and/or incorporated in the Ms. PAC-MAN video game.

[3] During the course of the parties' meet-and-confer discussions preceding the filing of this Application, AtGames' counsel indicated that AtGames would be willing to "entertain a contractual stipulation," but the contours of any such stipulation were never fully defined, and some provisions were completely unacceptable, and based on AtGames' prior conduct as alleged in the Complaint a contractual stipulation wherein the only remedy would be to sue for breach is woefully insufficient protection for BNEA, particularly given the valuable IP at stake.  Indeed, and again as alleged in the Complaint, BNEA has entered into various contracts with AtGames previously, and AtGames has repeatedly engaged in misconduct during the terms of those contracts.  BNEA has no reason to believe a further contract with AtGames would yield a different result or provide the assurances necessary under the facts as set forth herein.

PLAINTIFF'S NOTICE OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED

Case No. 5:19-CV-05898-VC

Indeed, despite BNEA's clear rights in and to the Ms. PAC-MAN Property—and AtGames' admitted lack thereof—AtGames has manufactured, imported, marketed, distributed, and now seeks to sell, various products incorporating identical copies of the Ms. PAC-MAN Property, including its registered trademarks, copyrighted works of authorship and game software (the "**Unauthorized Ms. PAC-MAN Products**").  BNEA therefore requires emergency relief in order to avoid imminent and irreparable harm to, among other things, its reputation and goodwill should AtGames further exploit, without authorization, BNEA's exclusive rights in and to the Ms. PAC-MAN Property.

## II.    RELEVANT PROCEDURAL BACKGROUND

On September 20, 2019, BNEA filed this action against AtGames alleging (i) trademark infringement; (ii) counterfeiting; (iii) copyright infringement; (iv) unfair competition and false designation of origin; (v) false advertising; and (iv) unfair competition and false advertising under the California Business and Professions Code.  Dkt. No. 1.  The Complaint was served on AtGames on October 9, 2019, and AtGames' responsive pleading is due on October 30, 2019.  Dkt. No. 13.  Also on October 9, 2019, BNEA gave notice to AtGames of its intent to file this Motion, and the parties met and conferred regarding the relief sought herein.  Weikert Decl. at ¶ 6.  AtGames refused to stipulate to the relief BNEA seeks herein. *Id.* at ¶¶ 6, 8.

No dispositive motions have been filed to date.

## III.    RELEVANT FACTUAL BACKGROUND

By as early as 2012, AtGames began contacting BNEA seeking to obtain a license to exploit BNEA's exclusive rights in the Ms. PAC-MAN Property.  Lundell Decl. ¶ 7.  Despite repeated requests and proposals from AtGames, including in recent months, BNEA has never granted any license to AtGames to exploit the Ms. PAC-MAN Property.  *Id.* at ¶ 8.

Nevertheless, BNEA has granted several other licenses to AtGames, allowing it to exploit various other properties.  *Id.*  In 2018, pursuant to one such license, AtGames was developing a product that would incorporate various BNEA-licensed properties, including characters, marks,

and game software from the highly valuable PAC-MAN game (the "**PAC-MAN Product**").  *Id*. at ¶ 9.  The PAC-MAN Product that AtGames ultimately released to the public had two distinct, but equally problematic, issues: (i) the PAC-MAN Product approved by BNEA contained approved, superior game software and packaging that matched its contents, but which was only provided to select reviewers of the PAC-MAN Product, and (ii) the version of the PAC-MAN Product that was widely distributed to retailers, and ultimately to consumers, contained unapproved, inferior software and packaging that did not match its contents.  *Id*. at ¶¶ 10, 12.  As a direct result of such misconduct, many purchasers of the PAC-MAN Product were furious that they had been misled by AtGames and reviewers to purchase an inferior product.  *Id*. at ¶ 13; Psihoules Decl. ¶¶ 2-6, Exs. A-E.  Some of those reviewers retaliated by recanting their prior reviews and broadcasting warnings to viewers telling them not to purchase the PAC-MAN Product.  Lundell Decl. ¶ 17.  Because the PAC-MAN Product prominently used BNEA's company name and various PAC-MAN characters and trademarks, BNEA's reputation, goodwill, and the intrinsic value of its PAC-MAN brand were irreparably harmed.  *Id*. ¶ 19.  BNEA's company name and its PAC-MAN characters and trademarks are now associated with this regrettable prior engagement with AtGames.  *Id*.  Thus, BNEA has a well-founded concern that AtGames' unauthorized exploitation of the Ms. PAC-MAN Property will yield equally damaging results in the eyes of the consuming public and will cause even greater harm to yet another BNEA property.  *Id*. ¶ 24.

On or around August 19, 2019, BNEA learned that AtGames developed an arcade cabinet that applies the Ms. PAC-MAN Mark (as defined below), as well as images of the copyrighted Ms. PAC-MAN arcade decals and characters, including various iterations of the Ms. PAC-MAN and ghost characters, on the cabinet (as defined in the Complaint, the "**Unauthorized Ms. PAC-MAN Product**"), knowing full well that it had no license to the Ms. PAC-MAN Property.  Lundell Decl. ¶ 20; May Decl. ¶ 2, Ex. A; Hokari Decl. ¶¶ 5-7, Ex. A.  The screen depicted in Exhibit A shows that the Unauthorized Ms. PAC-MAN Product also contains Ms. PAC-MAN game software

used without BNEA's permission.  Attached hereto as Exhibit A is a true and correct copy of a photograph of the Unauthorized Ms. PAC-MAN Product and a true and correct copy of a photograph of a licensed Ms. PAC-MAN product; *see also* May Decl., Ex. A; Lundell Decl., Ex. J.

AtGames has already manufactured and distributed the Unauthorized Ms. PAC-MAN Product.  Lundell Decl. ¶ 20; May Decl. ¶ 2, Ex. A.  Specifically, AtGames delivered an Unauthorized Ms. PAC-MAN Product to at least one individual, Kevin Curran ("Curran"), located on the East Coast.  May Decl. ¶ 2.

Further, AtGames has marketed and sought to sell the Unauthorized Ms. PAC-MAN Product to nationwide retail chains.  Lundell Decl. ¶ 23.  On September 3, 2019, Hideaki Irie, BNEA's Executive Vice President and Chief Operating Officer, received an unsolicited email from Watt & Co. Vice President of Sales, John Ebbinghouse, stating, in part: "I have been working with PK Hsiung and the team at AtGames for many years . . . He and I are working on creating an opportunity with Ms. Pac Man licensed product for GameStop."  Irie Decl. ¶ 3, Ex. A.  Shortly thereafter, Mr. Hsiung replied to the unsolicited email only to emphasize that he believed a "significant revenue opportunity" is available for a Ms. PAC-MAN product "at GameStop," but making no attempt to correct Mr. Ebbinghouse's misunderstanding that any such product had been "licensed" by BNEA.  *Id.* ¶ 4, Ex. A. Indeed, even GameStop has confirmed the extent of AtGames' efforts. Since receiving Mr. Ebbinghouse's emails, two employees of GameStop have confirmed that representatives of AtGames have marketed or offered to sell Ms. PAC-MAN products to GameStop, including the same Unauthorized Ms. PAC-MAN Product shipped to Curran.  Lundell Decl. ¶ 23; Windham Decl. ¶ 6, Ex. A.  AtGames has openly admitted that it seeks to have the Unauthorized Ms. PAC-MAN Products available for purchase during the 2019 holiday shopping season.  May Decl. ¶ 4, Ex. C.

Moreover, after learning of the extent of AtGames' efforts to market and sell the Unauthorized Ms. PAC-MAN Product, BNEA has obtained additional evidence of AtGames'

unauthorized use of the Ms. PAC-MAN Property in connection with other products.  In late 2018 and in early 2019, AtGames provided third party sales representatives with marketing materials depicting AtGames' plans to sell at least three different products containing the Ms. PAC-MAN game software and incorporating various other protected elements of the Ms. PAC-MAN Property, including the Ms. PAC-MAN Mark and the Ms. PAC-MAN character.  Peake Decl. ¶¶ 4 and 6, Exs. B and D. These additional unauthorized uses of the Ms. PAC-MAN Property, together with the offers to sell the Unauthorized Ms. PAC-MAN Products to GameStop, are significant not only because each constitutes a discrete act of infringement, but because AtGames has insisted repeatedly that the Unauthorized Ms. PAC-MAN Product provided to Curran was the only instance in which AtGames had made any use of the Ms. PAC-MAN Property.  Weikert Decl. ¶ 3, Ex. B.

In order to put an immediate end to further production, promotion, and distribution of the Unauthorized Ms. PAC-MAN Products, as well as any other such products, and to mitigate the harm already suffered by BNEA, counsel for BNEA has sent a number of letters to AtGames seeking an agreement from AtGames and its affiliates, in the form of a stipulated injunction, that they "agree to cease all production, promotion, and distribution, in any form, of the infringing Ms. PAC-MAN cabinet and any other Ms. PAC-MAN products that are the subject of the Complaint." Weikert Decl. ¶ 5, Ex. D.  BNEA would not have been compelled to seek emergency relief if AtGames had agreed to such straightforward terms.  *Id*. ¶ 4.  AtGames has refused to agree to the proposed terms, however, and by all indications has continued promoting the Unauthorized Ms. PAC-MAN Products, thus forcing BNEA to seek relief from the Court.  *Id*. ¶¶ 6, 8.

## IV.   LEGAL STANDARD

The standard for issuance of a temporary restraining order is identical to the standard for issuance of a preliminary injunction. *NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1117 (C.D. Cal. 2011) (quoting *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995)); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Typically, a party seeking a preliminary injunction or temporary restraining order is required to make a showing as to each of four elements: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) an advancement of the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). A preliminary injunction is also appropriate if a plaintiff satisfies the "serious questions" test by raising "serious questions going to the merits" (as opposed to a likelihood of success), demonstrating that the "balance of hardships tips sharply in the plaintiff's favor," and satisfying the remaining two factors. *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1134-35 (9th Cir. 2011). As shown below, BNEA can satisfy either test.

## V.   IMMEDIATE RELIEF IS NECESSARY AND A TRO AND PRELIMINARY INJUNCTION ARE APPROPRIATE

As set forth herein, BNEA satisfies each of the four elements evaluated for injunctive relief.

### a.   BNEA Is Likely To Succeed On The Merits Of Its Claims

BNEA can establish its strong likelihood of success as to the causes of action asserted in the Complaint.[4] Dkt. No. 1.

### i.   Trademark Infringement under the Lanham Act

To prevail on its claim for trademark infringement, BNEA must show (1) the mark at issue is valid and protectable; and (2) use of the mark is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods. 15 U.S.C. § 1114(1)(a); *see Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

---

[4] For purposes of the emergency relief sought herein, BNEA is not including a discussion of all the claims it has asserted in the Complaint, as overlapping supporting evidence, in many cases, would require redundant citations thereto. The causes of action addressed herein are also sufficient to support the narrowly tailored relief sought through this Application. Nevertheless, for the reasons set forth in the Complaint and as will be established at trial, BNEA also fully intends and expects to prevail on its claims for Unfair Competition and False Designation of Origin under the Lanham Act, False Advertising under the Lanham Act, Unfair Competition under California Business and Professions Code § 17200, and False Advertising under California Business and Professions Code § 17500.

PLAINTIFF'S NOTICE OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED

Here, BNEA has exclusive rights to use as well as to enforce U.S. Trademark Registration No. 1,279,066 for the mark Ms. PAC-MAN, dated July 21, 1982 (the "**Ms. PAC-MAN Registration**" and the "**Ms. PAC-MAN Mark**").  Lundell Decl. ¶¶ 2, 5.  The Ms. PAC-MAN Registration is incontestable, and, as such, is conclusive evidence of the validity and protectability of the Ms. PAC-MAN Mark.  *See* 15 U.S.C. § 1115(b); *see also Brookfield Commc'ns, Inc.*, 174 F.3d at 1047.  BNEA, along with its affiliates and predecessors in interest, have exclusively used the Ms. PAC-MAN Mark and other related marks in connection with their goods and services since at least 1987, and have acquired valuable rights and goodwill in and to such marks.  Lundell Decl. ¶ 2, 4.

The benchmark for trademark infringement is likelihood of confusion, which asks whether a reasonably prudent marketplace consumer is likely to be confused as to the origin of the good or service bearing the mark.  *Rearden LLC v. Rearden Commerce, Inc*., 683 F.3d 1190, 1214 (9th Cir. 2012) (citation omitted).[5]  In cases involving a counterfeit mark, as here (and discussed in more detail below), it is unnecessary to perform the step-by-step examination of the likelihood of confusion factors because counterfeit marks are inherently confusing.  *Rolex Watch U.S.A., Inc. v. Watch Empire LLC*, 2015 WL 9690322, at *4 (C.D. Cal. Sep. 29, 2015) (quoting *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004)).  In fact, use of a plaintiff's exact mark can be dispositive of the consumer confusion issue.  *Jack in the Box Inc. v. Mehta*, 2016 WL 3401988, at *8 (N.D. Cal. June 21, 2016).

Both the Unauthorized Ms. PAC-MAN Product and the promotional materials distributed by AtGames bear the identical Ms. PAC-MAN Mark.  Ex. A; May Decl. ¶ 2, Ex. A; Peake Decl.

---

[5] To determine whether a likelihood of consumer confusion exists, the Ninth Circuit relies on an eight-factor test, which evaluates: (1) the strength of the mark; (2) proximity of relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) types of goods or degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines.  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), abrogated in part on other grounds by *Mattel, Inc. v. Walking Mountain Prods*., 353 F.3d 792, 810 (9th Cir. 2003).

¶¶ 4 and 6, Exs. B and D.  On these grounds alone, BNEA is able to establish a likelihood of consumer confusion.

Moreover, each of the *Sleekcraft* factors weighs heavily in BNEA's favor.  Ms. PAC-MAN is one of the most famous and successful video games of all-time, and the Ms. PAC-MAN Mark is central both to its notoriety and success.  Lundell Decl. ¶¶ 4, 24; *see Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988) ("Marks may be strengthened by extensive advertising, length of time in business, public recognition, and uniqueness").  Thus, factor one (strength of the mark) is beyond dispute and readily established.  As to the second (relatedness of the goods), third (similarity of the marks), and eighth factors (expansion of product lines), both the Unauthorized Ms. PAC-MAN Product and AtGames' marketing materials feature exact replicas of the Ms. PAC-MAN Mark on an arcade cabinet and other products, which are in the same class of goods specifically identified in the Ms. PAC-MAN Registration, that mirror items BNEA sells, licenses to sell, and/or has plans to license to sell.  Ex. A; May Decl. ¶ 2, Ex. A; Peake Decl. ¶¶ 4 and 6, Exs. B and D.  Each of these factors favors BNEA.

As to the fifth (marketing channels) and sixth (degree of customer care) *Sleekcraft* factors, AtGames has marketed the Unauthorized Ms. PAC-MAN Product and/or other infringing products incorporating the Ms. PAC-MAN Mark to retailers and distributors with which BNEA has longstanding relations, including GameStop.  Lundell Decl. ¶¶ 22-23.  Further, the products at issue are nostalgia driven, and are sold largely on the basis of the notoriety and reputation of the games included therein.  Thus, consumers are drawn to products in this category by the games listed, rather than the underlying manufacturer, and the bigger, more famous the name, such as Ms. PAC-MAN, the more appealing such products are to consumers. The overlapping marketing channels and the nature of consumption in the marketplace strongly favors BNEA.

Finally, AtGames knew that the Unauthorized Ms. PAC-MAN Products bore the exact Ms. PAC-MAN Mark.  *See* Weikert Decl., Ex. B.  "When an alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can achieve his purpose:

that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354 (citations omitted).  Given AtGames' use of the identical Ms. PAC-MAN Mark, both the fourth (actual confusion) and seventh (defendant's intent) *Sleekcraft* factors tilt heavily in BNEA's favor.  In sum, BNEA is likely to succeed on the merits of its trademark infringement claim.

> ii.      *Counterfeiting under the Lanham Act*

To establish a claim for counterfeiting against AtGames under the Lanham Act, BNEA must show that AtGames applied a counterfeit mark to or on the same type of goods or services for which BNEA's genuine mark is registered for use without authorization.  *See generally, Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 946 (9th Cir. 2011).  A counterfeit mark is defined under the Lanham Act as a "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.

Here, the Unauthorized Ms. PAC-MAN Products bear the exact same Ms. PAC-MAN Mark, which is identical to what is reflected in the Ms. PAC-MAN Registration.  Ex. A; Lundell Decl. ¶ 5, Ex. A; May Decl. ¶ 2, Ex. A; Peake Decl. ¶¶ 4 and 6, Exs. B and D.  AtGames' unlawful use of the Ms. PAC-MAN Mark is in connection with the Unauthorized Ms. PAC-MAN Products, which are the exact same types of products covered under the Ms. PAC-MAN Registration, including, electronic video games or arcade machines.  Lundell Decl. ¶ 5.  Under these facts, BNEA is likely to succeed on its counterfeiting claim.

> iii.      *Copyright Infringement under the Copyright Act*

To prevail on its claim for copyright infringement, BNEA must show (1) exclusive rights in a valid copyright and (2) copying of the original elements of the protected work.  *Feist Publications v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *see* 17 U.S.C. § 201(d)(2) (exclusive licensees are "entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title"); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 887 (9th Cir. 2005) ("[E]ach separate owner of a subdivided exclusive right may sue to enforce that owned portion of an exclusive right").

Here, BNEA has exclusive rights to reproduce, distribute, display, perform, create derivative works of and/or use the works protected by numerous U.S. copyright registrations relating to Ms. PAC-MAN (collectively the "**Ms. PAC-MAN Copyright Registrations**" and the "**Ms. PAC-MAN Copyrights**" respectively), as well as to enforce the Ms. PAC-MAN Copyrights in the United States.  Lundell Decl. ¶¶ 3, 6.  Each of the Ms. PAC-MAN Copyright Registrations were made before or within five years of first publication of the respective work and constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.  *See* 17 U.S.C. § 501(a).

As to the second factor, proof of copying requires a showing (1) of access to the protected work before creating the accused work and (2) that a substantial similarity of expression exists between the protected and accused works.  *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989).  The Ninth Circuit's standard for proving access is that the defendant had "an opportunity to view or copy plaintiff's work," which may be inferred based on wide dissemination of a work.  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000) (*quoting Sid and Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977)).  In view of the global distribution of Ms. PAC-MAN-related products over nearly forty years, incorporating the Ms. PAC-MAN Copyrights, including various iterations of the Ms. PAC-MAN character and other game characters, coupled with the fact that the Unauthorized Ms. PAC-MAN Products incorporated exact replicas of the Ms. PAC-MAN Copyrights, it is indisputable that AtGames had access to one or more of the Ms. PAC-MAN Copyrights.

In this case, the Court need not undertake an extensive analysis, under either the extrinsic or the intrinsic test, regarding substantial similarity since AtGames is using exact replicas of the Ms. PAC-MAN characters on or in connection with the Unauthorized Ms. PAC-MAN Products and in its promotional materials.  Ex. A; May Decl. ¶ 2, Ex. A; Peake Decl. ¶¶ 4 and 6, Exs. B and D; *see also Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004).  Such works are not simply

substantially similar; they are identical reproductions of the Ms. PAC-MAN Copyrights. Therefore, BNEA is likely to succeed on its claim for copyright infringement.

   b.   <u>BNEA Will Be Irreparably Injured If Injunctive Relief Is Not Granted</u>

Irreparable injury is the "single most important prerequisite for the issuance of a preliminary injunction." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2nd Cir. 2005). An act that inflicts "cognizable irreparable injury" is sufficient to support an injunction. *M.R. v. Dreyfus*, 697 F.3d 706, 728-729 (9th Cir. 2012). The irreparable harm need only be likely, but not certain to occur. *Michigan v. United States Army Corp. of Engineers*, 667 F.3d 765, 788 (7th Cir. 2011). Damage to a company's reputation constitutes irreparable injury. *United Healthcare Ins. Co. v. Advance-PCS*, 316 F.3d 737, 741 (8th Cir. 2002); *see also Optinrealbig.com, LLC v. Ironport Systems, Inc.*, 323 F.Supp.2d 1037, 1050 (N.D. Cal. 2004) (stating, "Damage to a business' goodwill is typically an irreparable injury because it is difficult to calculate.").

Here, BNEA will suffer irreparable harm if AtGames is able to use unlicensed Ms. PAC-MAN Property to produce, distribute, and/or promote the Unauthorized Ms. PAC-MAN Product, or any other product using or incorporating Ms. PAC-MAN Property. BNEA has already suffered significant reputational harm as a result of AtGames' use of its valuable intellectual property. Lundell Decl. ¶ 19. AtGames' misleading distribution of a superior version of the PAC-MAN Product to reviewers followed by the distribution of a different and inferior version to retailers and consumers led to substantial negative attention for BNEA in the fall of 2018. *Id.* ¶¶ 12-19; Psihoules Decl. ¶¶ 2-6, Exs. A-E. Since AtGames' products—both those that were previously licensed as well as the unlicensed Unauthorized Ms. PAC-MAN Products—prominently feature BNEA's valuable intellectual property, the adverse consequences of AtGames' actions have and likely will continue to damage BNEA's reputation among consumers. Lundell Decl., ¶ 19, 24; May Decl. ¶ 2, Ex. A. The past reputational harm to BNEA inflicted by AtGames clearly indicates that BNEA will, once again, be irreparably harmed without the requested relief. Lundell Decl., ¶ 24.

"Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm." *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013), citing *Stuhlbarg Int'l Sales Co., Inc.*, 240 F.3d at 841. Entry into the market of an unlicensed product using Ms. PAC-MAN Property, particularly when manufactured by an entity that has a history of misusing BNEA's intellectual property, creates an unbearable risk to BNEA's goodwill and reputation in the industry. In the absence of an injunction, BNEA would lose control over the use of the Ms. PAC-MAN Property that is front and center in the infringing products being promoted by AtGames. Lundell Decl. ¶ 24; May Decl. ¶ 2, Ex. A; Peake Decl. ¶¶ 4 and 6, Exs. B and D. Given Ms. PAC-MAN's prominent position in video game history and in BNEA's asset portfolio, and AtGames' negative reputation in the market and history of damaging media attention, losing such control exposes BNEA to irreparable harm to its business reputation and goodwill. *See* Lundell Decl. ¶ 24; Psihoules Decl. ¶¶ 2-6, Exs. A-E.

The threat of irreparable harm here is immediate. The Unauthorized Ms. PAC-MAN Product has already been produced and distributed. May Decl., ¶ 2, Ex. A; Lundell Decl. ¶ 20. AtGames has also indicated that it intends to make other infringing products, likely including the Unauthorized Ms. PAC-MAN Product, available for sale to retailers shortly, and that it has already issued, or is prepared to issue, purchase orders in furtherance of those sales efforts. May Decl. ¶¶ 3 and 4, Exs. B and C; Lundell Decl. ¶ 22. Therefore, the grave threat to BNEA's reputation and goodwill is already underway and the risk of irreparable reputational harm, similar to that which AtGames has previously inflicted on BNEA, is imminent.

In addition, AtGames' intent to promote products that use and incorporate Ms. PAC-MAN Property beyond just the Unauthorized Ms. PAC-MAN Product is clear. Peake Decl. ¶¶ 4 and 6, Exs. B and D. While the full extent of AtGames' intention to illicitly exploit unlicensed Ms. PAC-MAN Property is unknown at present, the expansive scope for imminent irreparable harm is evidenced by: (i) AtGames' development, production, and distribution of the Unauthorized Ms. PAC-MAN Product; (ii) AtGames' promotion and marketing of additional products to third party

12

sales representatives that prominently use unlicensed Ms. PAC-MAN Property; (iii) AtGames' communications with some of the largest retailers in the industry to promote products that infringe on BNEA's intellectual property; and (iv) AtGames' eager engagement with John Ebbinghouse regarding a product for which BNEA has not been granted a license. *See* May Decl. ¶ 2, Ex. A; Peake Decl. ¶¶ 4 and 6, Exs. B and D; Lundell Decl. ¶ 20-24; Irie Decl. ¶¶ 3 and 4, Ex. A.

For the above reasons, BNEA has established that it is likely to suffer irreparable and immediate harm to its reputation and goodwill if AtGames is not enjoined from producing, promoting, or distributing the Unauthorized Ms. PAC-MAN Products, and any other products that infringe on BNEA's rights in and to the Ms. PAC-MAN Property.

       c.     The Balance of Hardships Strongly Favors BNEA

A court considering an injunction evaluates the degree of harm that will befall the plaintiff or the defendant if the injunction is improperly granted or denied. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 284 (4th Cir. 2002). As described above, and as AtGames has admitted, AtGames has no rights to use or exploit the Ms. PAC-MAN Property, nor has it ever had such rights. The only aspect of AtGames' business that would be "disrupted" by the relief sought herein would be as it relates to AtGames' unlawful use of the Ms. PAC-MAN Property, which ought to be no disruption at all. *See Triad Systems Corp. v. Southeastern Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) (holding that the defendant "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities"), *superseded by statute on other grounds*, 17 U.S.C. § 117(c); *accord Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration [on appeal from a preliminary injunction]'," citations omitted). As set forth herein, BNEA, on the other hand, would suffer a substantial hardship if the requested injunction does not issue. The balance of hardships overwhelmingly favors BNEA.

d.      An Injunction Would Advance the Public Interest

The "public interest" inquiry generally addresses the impact upon nonparties of granting or withholding injunctive relief. *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). In the trademark context, "the usual public interest concern . . . [is] avoiding confusion to consumers." *Internet Specialties West, Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 993 (9th Cir. 2009). In copyright cases, "it is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F. Supp.3d 957, 978 (C.D. Cal. 2016) (citations omitted). Here, an injunction would prevent the public from being deceived by AtGames' distribution and sale of the Unauthorized Ms. PAC-MAN Products. Further, AtGames has earned a poor reputation among the consuming public through its repeated distribution of faulty products. Psihoules Decl. ¶¶ 2-6, Exs. A-E. Both professional reviewers and consumers alike have found that AtGames does not deliver on its promises, even when its products are fully licensed and approved by the rights holder. *Id.*. Therefore, the public has already spoken, and it is in the public's interest to ensure that AtGames is not permitted to manufacture, distribute, and sell infringing products. On the other hand, denial of the injunction would permit AtGames to continue its effort to introduce infringing, unlicensed products into the market which harm both BNEA and the public. The public interest is not advanced by permitting illegal and deceptive products into the flow of commerce.

///

///

///

///

///

///

///

PLAINTIFF'S NOTICE OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED
Case No. 5:19-CV-05898-VC

## VI.     CONCLUSION

For the reasons shown above, BNEA respectfully requests this Court enter an order in the form shown in the proposed order served herewith.

DATED:  October 17, 2019

Respectfully submitted,

**NIXON PEABODY LLP**

By:   */s/ Robert A. Weikert*

Robert A. Weikert (Bar No. 121146)
rweikert@nixonpeabody.com
Andrew H. Winetroub (Bar No. 291847)
awinetroub@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 32nd Floor
San Francisco, California 94111-3600

David L. May (*Pro Hac Vice Pending*)
dmay@nixonpeabody.com
Jennette W. Psihoules (*Pro Hac Vice Pending*)
jpsihoules@nixonpeabody.com
NIXON PEABODY LLP
799 9th Street NW
Washington, DC 20001-4501

*Attorneys for Plaintiff*
BANDAI NAMCO Entertainment America Inc.