Robert A. Weikert (Bar No. 121146)
rweikert@nixonpeabody.com
Andrew H. Winetroub (Bar No. 291847)
awinetroub@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 32nd Floor
San Francisco, California 94111-3600
Tel: (415) 984-8200
Fax: (866) 294-8300

David L. May (*Appearance Pro Hac Vice*)
dmay@nixonpeabody.com
Jennette W. Psihoules (*Appearance Pro Hac Vice*)
jpsihoules@nixonpeabody.com
NIXON PEABODY LLP
799 9th Street NW
Washington, DC 20001-4501
Tel: (202) 585-8000
Fax: (202) 585-8080

*Attorneys for Plaintiff*
BANDAI NAMCO Entertainment America Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| BANDAI NAMCO ENTERTAINMENT AMERICA INC., <br><br> Plaintiff, <br><br> vs. <br><br> ATGAMES HOLDINGS LTD.; and DOES 1 through 50, <br><br> Defendants. | Case No.:  3:19-cv-05898-VC <br><br> **PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED** <br><br> Hearing Date: November 14, 2019 <br> Time:             10:00 a.m. <br> Courtroom:    4 |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 3

    A. AtGames Has Recently Revealed Previously Undisclosed Infringement and Continued to Mislead Consumers Regarding Ms. PAC-MAN .............................. 3

    B. AtGames' Significant Preparations to Sell Infringing Ms. PAC-MAN Products ..................................................................................................................... 5

    C. AtGames Knew Its Use of the Ms. PAC-MAN Property Was Impermissible ....... 7

    D. AtGames' Proffered Defenses to Its Infringement Are Woefully Insufficient ....... 8

III. CONCLUSION ................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Herb Reed Enterprises, LLC v. Florida Entertainment Mgmt., Inc.*,
    736 F.3d 1239 (9th Cir. 2013) ...............................................................................................5

*Jack in the Box, Inc. v. Mehta,*
    2016 WL 3401988 (N.D. Cal. June 21, 2016).......................................................................8

*Rearden LLC v. Rearden Commerce, Inc.,*
    683 F.3d 1190 (9th Cir. 2012) ...............................................................................................9

*Republic of the Philippines v. Marcos,*
    862 F.2d 1355 (9th Cir. 1988) ...............................................................................................5

*Walker Mfg. v. Hoffmann, Inc.*,
    261 F. Supp. 2d 1054 (N.D. Iowa 2003)..............................................................................10

**Federal Statutes**

17 U.S.C. § 107...........................................................................................................................10

15 U.S.C. § 1114(1)(a)..................................................................................................................9

**Other Authorities**

Federal Rule of Civil Procedure 7.1 .............................................................................................1

Civil Local Rule 3-15....................................................................................................................1

Standing Order for Civil Cases Before Judge Vince Chhabria......................................................1

- ii -

PLAINTIFF'S REPLY MEMO ISO ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED
Case No. 3:19-cv-05898-VC

I.  **INTRODUCTION**

Although styled as an opposition, AtGames' response to the Court's Order to Show Cause (the "Opposition") only underscores the need for an injunction here.[1] AtGames repeatedly acknowledges that it has no right whatsoever to use any of the Ms. PAC-MAN Property (as defined in the Application).[2] Yet, AtGames also admits that it has in fact used the Ms. PAC-MAN Property in connection with at least three arcade prototypes and in "concept marketing brochures" that it distributed, at a minimum, to sales representatives. Despite AtGames' claims to the contrary, BNEA never authorized these uses nor are AtGames' unlawful actions accepted or "customary" business practices in the industry.

Moreover, several of AtGames' representations are not credible for multiple reasons.[3] Foremost among them is this critical September 18, 2019 statement from AtGames' counsel, Jinshu "John" Zhang, which AtGames inadequately attempts to explain away in the Opposition:

> "We are waiting for Bandai Namco's approval for allowing us to closing loop with Walmart and with GameStop to issue each's respective purchase orders (POs) to us for selling the items [Ms. PAC-MAN products] in Holidays 2019. Our drop-dead deadline for receiving the POs is October 7 for capturing the revenue." Zhang Decl., Ex. D.

Indeed, AtGames has stated that its own development cycle for such a product is six months. Given the nature of the products at issue (i.e. consumer electronics), with an October 7 deadline, there is simply no way that AtGames would have been able to fill these orders in time

---

[1] BNEA hereby moves to strike the Opposition in its entirety for its egregious violation of the page limits for briefs set forth in this Court's Standing Order. *See* Standing Order for Civil Cases Before Judge Vince Chhabria (the "Standing Order") at ¶¶ 33, 35. Pursuant to the Standing Order, opposition briefs "may not exceed 15 pages." *Id.* at ¶ 33. AtGames did not move to increase the page limit for its brief, despite the Court's requirement that such a motion "be filed no later than 72 hours before the brief is due." *Id.* at ¶ 35. In the face of the Court's clear rules, AtGames' Opposition brief extends to twenty-four (24) pages. In the alternative to striking the Opposition brief in its entirety, BNEA moves the Court not to consider any and all material in the Opposition past the 15-page limit, including the declarations and exhibits cited on the offending excess pages.

[2] The capitalized terms used herein shall have the meaning ascribed to them in Bandai Namco Entertainment America Inc.'s Notice of *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Be Granted (the "Application"). Dkt. No. 14.

[3] BNEA notes that AtGames also failed to file either the Corporate Disclosure Statement or the Certification of Interested Entities or Persons, as required at the time of its first appearance in the case pursuant to Federal Rule of Civil Procedure 7.1 and Civil Local Rule 3-15, respectively.

for the 2019 holiday season unless the products had already been manufactured or were far along in production.  Further, AtGames and its counsel have either repeatedly misrepresented the number of prototypes AtGames produced or the number has actually continued to increase throughout the pendency of this case.  While AtGames now admits in the Opposition to producing three prototypes, its initial representation to BNEA, which followed previous denials, was that only one prototype had been produced.  The likely reality is that AtGames has a warehouse full of infringing Ms. PAC-MAN products either here in California or in China, and intended to fill the Walmart and GameStop purchase orders (and other orders) from that stockpile.[4]  Assuming AtGames is complying with its evidence preservation obligations, this will be the topic of extensive discovery and likely seizure.

Further, the motive for AtGames' brazen conduct is now clear.  Based on the newly-revealed August 16, 2019 AtGames-GCC agreement,[5] AtGames painted itself into a corner with that agreement and is desperate to sell Ms. PAC-MAN products in order to recoup its investment and meet its contractual obligations to the GCC successors-in-interest.  Thus, it jumped the gun on the Ms. PAC-MAN products and sought to sell them before it had any right to do so.  As the agreement expressly provides, AtGames projected a "first product marketing date" only *two weeks* later (September 1, 2019), an October 1, 2019 "first product shipment date," and an October 20, 2019 "first product release date."  Again, the only way that AtGames could meet these projected dates would be if products had already been manufactured and were ready for imminent shipment to retailers.

---

[4] GameStop and Walmart are the only two retailers that BNEA is currently aware of to which AtGames shopped the infringing Ms. PAC-MAN products.  But there is little doubt, based on the admissions in the Opposition alone as well as the lack of any statement from AtGames to the effect that it never offered to sell the products to anyone else, that the products have been offered to many others by AtGames and its sales representatives going as far back apparently as the fourth quarter of 2018.

[5] Immediately prior to filing the Opposition, AtGames filed an Administrative Motion to File Under Seal the Lee Declaration and Certain Supporting Declaration Exhibits In Support Of AtGames' Opposition to Plaintiff's *Ex Parte* Application (the "Motion to Seal").  Dkt. No. 22.  Among other deficiencies, the Motion to Seal failed to comply with this Court's rules, or even cite to the Standing Order, for such motions.  As a result, BNEA timely filed an Opposition to the Motion to Seal.  Dkt. No. 24.  At present, the parties have fully briefed the Motion to Seal and it is presently pending before the Court.

- 2 -

PLAINTIFF'S REPLY MEMO ISO ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED
Case No. 3:19-cv-05898-VC

Consequently, this action and the subject Application have nothing to do with "retaliation." They are designed purely to protect BNEA's rights, which BNEA had no reason to believe were being infringed until its initial discovery of AtGames' Unauthorized Ms. PAC-MAN Product on August 19, 2019.  AtGames has already established that, even when operating under prior, written license agreements from BNEA, it cannot be trusted — and, now, even less so in the absence of one.  For all of the reasons set forth in the Application and in this Reply, its unauthorized, and ongoing, use and threatened use of BNEA's Ms. PAC-MAN Property has caused and continues to cause BNEA irreparable harm.  If AtGames is truly no longer producing, promoting, or distributing infringing Ms. PAC-MAN products, as it alleges, then AtGames should have no objection to the Court entering the requested injunction.  Thus, AtGames' opposition to BNEA's Application reveals AtGames' motivations, and confirms that AtGames has every intention of continuing to produce, promote and distribute infringing Ms. PAC-MAN products despite acknowledging that it has no right to do so.

## II.     ARGUMENT

### A.     AtGames Has Recently Revealed Previously Undisclosed Infringement and Continued to Mislead Consumers Regarding Ms. PAC-MAN

Shortly after filing the Application, BNEA was surprised to learn, through an admission made by AtGames to the press in connection with this litigation, of the existence of a second Ms. PAC-MAN prototype produced by AtGames without BNEA's permission.  *See* Weikert Supp. Decl. ¶ 3, Ex. B.  AtGames' statement was the first time it revealed, at least to BNEA, the existence of a second Ms. PAC-MAN prototype.  In fact, AtGames' public admission regarding its production of a second prototype directly contravened representations its counsel had previously made to BNEA.  *See* Weikert Decl. ISO Application, Ex. B at 2 (describing BNEA's allegations in the Complaint that AtGames had produced more than the single infringing prototype sent to Kevin Curran ("Curran") as "unfounded and meritless").[6]  Now, incredibly, in its Opposition,

---

[6] That same letter from AtGames' counsel, sent *after* the Complaint was on file, refused to even acknowledge that AtGames had created the Unauthorized Ms. PAC-MAN Product. Weikert Decl. ISO Application, Ex. B at 1 ("Here, assuming for the sake of argument that the allegations in the Complaint were true, AtGames would have provided

- 3 -

PLAINTIFF'S REPLY MEMO ISO ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED
Case No. 3:19-cv-05898-VC

AtGames discloses the existence of a third prototype. Opposition at 1:14-16 ("AtGames made **three** prototypes of a home arcade product that included Ms. PAC-MAN." (emphasis in original)).

After first being informed that a single prototype had been produced and distributed to a single recipient, then subsequently reading a public statement that only two prototypes had been produced, BNEA has no reason to accept, and cannot be expected to accept, the veracity of AtGames' newest statement that the number of prototypes produced is limited to three.[7] As discussed herein, the most reasonable inference available to BNEA, when all of the facts are taken together, is that many more "prototypes" have been produced and that AtGames stands ready to distribute them as it effectively represented to Walmart, GameStop and Curran.

Moreover, after filing the Application, BNEA has also become aware of statements by AtGames' representatives that continue to suggest to consumers that a Ms. PAC-MAN product is forthcoming, even after BNEA filed the Complaint in this action. Murov Decl. ¶ 4, Ex. A; Weikert Supp. Decl. ¶ 2, Ex. A. These statements accentuate the false perception of uncertainty regarding ownership of the Ms. PAC-MAN Property that AtGames continues to propagate, and deceive consumers into believing that the infringing product will likely be available at some point, all to the inevitable detriment of both BNEA and existing and future Ms. PAC-MAN licensees. *See* Lundell Decl. ISO Application ¶ 24.[8] Examples of Harold Chizick's wrongful promotion of a

---

one copy of the so-called 'Unauthorized Ms. PAC-MAN Product' to one person"); *see also id*. at 2 ("BNEA has, at best, alleged that AtGames created a prototype and disclosed it to one other person (again, Mr. Curran). Assuming that were true . . . ."). Simply, BNEA filing this lawsuit was not enough for AtGames to admit that it had produced the Unauthorized Ms. PAC-MAN Product. It was not until the eve of BNEA moving for emergency relief that AtGames finally admitted to its infringing production and distribution, and even then it refused to inform BNEA of the third prototype until the filing of the Opposition.

[7] Notably, BNEA did not learn of the infringing Ms. PAC-MAN prototype from AtGames. It was Curran who informed BNEA of the existence of the Unauthorized Ms. PAC-MAN Product and who shared a picture of what AtGames had sent to him. May Decl. ISO Application ¶ 2. In the Opposition, AtGames alleges that it sent the Unauthorized Ms. PAC-MAN Product to Curran so he could "help AtGames with its pending licensing request." Opposition at 6:25-28. Yet, the fact is that AtGames never disclosed or showed the prototype to anyone at BNEA. It is not credible to allege that the prototype was developed, produced, and distributed with the intent of "help[ing] its pending licensing request" when AtGames hid the existence of the prototype, and the quantity thereof, from BNEA. AtGames' claim that the production of such prototypes is "customary" is simply untrue, particularly when no license has been given or exists, and no product was submitted for licensor approval. Lundell Supp. Decl. ¶ 5.

[8] AtGames' evidentiary objections are not supported by Ninth Circuit precedent. *See* Opposition at 19:15-28. Specifically, the Ninth Circuit has held that, "Due to the urgency of obtaining a preliminary injunction at a point

- 4 -

PLAINTIFF'S REPLY MEMO ISO ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED
Case No. 3:19-cv-05898-VC

putative Ms. PAC-MAN product, as well as his efforts (undoubtedly at the direction of his principal, AtGames) to sow confusion in the marketplace as to AtGames' right to produce such a product, include his statement regarding a Ms. PAC-MAN-themed arcade cabinet that he "cant let some cats out of the bag…[smiling emoji]" and his multiple comments approving of other Facebook users' assertions that BNEA is no longer the owner of the rights to Ms. PAC-MAN. Murov Decl. ¶ 4, Ex. A. These representations to consumers are willfully misleading. AtGames says one thing to this Court – i.e. that "it is not authorized to sell Ms. Pac-Man without a license from BNEA" – but it, along with its agents, characterizes the facts differently, and falsely, when addressing consumers directly.

As such, in addition to the evidence submitted in the Application, BNEA's post-Application statements and other recently-discovered representations illustrate BNEA's need for a preliminary injunction.

### B. AtGames' Significant Preparations to Sell Infringing Ms. PAC-MAN Products

AtGames repeatedly asserts that it "is not marketing, advertising, distributing, promoting, offering to sell, or selling any product, packaging, or any other item of any kind that uses, includes, or incorporates Ms. Pac-Man IP." *See*, *e.g.*, Opposition at 1:11-12. Yet, AtGames' conduct, statements, and recently revealed evidence clearly show that these assertions are false.[9]

As stated above, AtGames' counsel informed BNEA on September 18, 2019 that it was prepared to receive purchase orders from Walmart and GameStop within three weeks (*e.g.*, by October 7, 2019) for sales of Ms. PAC-MAN products during the 2019 holiday season. Zhang

---

when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enterprises, LLC v. Florida Entertainment Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013) (citing *Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1363 (9th Cir.1988) ("It was within the discretion of the district court to accept . . . hearsay for purposes of deciding whether to issue the preliminary injunction.")). Accordingly, AtGames' evidentiary objections should be overruled in their entirety.

[9] Despite its statements to the contrary in the Opposition, AtGames was never willing to agree to a publicly-filed stipulation that would enjoin it from, among other things, using the Ms. PAC-MAN Property. *See* Opposition at 2:4-6. Notably missing from AtGames' mischaracterization of its proposed "stipulation" is the fact that it was open only to a confidential out-of-court agreement or a sealed filing. *See* Weikert Decl. ISO Application, Exs. F & G.

- 5 -

PLAINTIFF'S REPLY MEMO ISO ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED
Case No. 3:19-cv-05898-VC

Decl., Ex. D.  Yet, by AtGames' own admission, a Ms. PAC-MAN product – either as a game embedded in a home arcade or in a HDMI game dongle – would require **six (6) months** of development time prior to a release date.  Hsiung Decl., Ex. 4 at 4, 7.  Moreover, AtGames admits that it anticipated manufacturing Ms. PAC-MAN products in mainland China, which would necessarily add to the time required to distribute the goods to retailers, not to mention the development of a logistics plan, securing means of shipment, compliance with import-export laws, and other aspects of international trade.  *See id*.  Based on the foregoing, and again on AtGames' further admissions, the only way it would have been able to fill purchase orders received between September 18, 2019 and October 7, 2019 in time for the 2019 holiday season was to illegally commence development of Ms. PAC-MAN products prior to securing a license from BNEA, which is what AtGames has clearly done.

Moreover, it now appears that AtGames' plans were even more ambitious and driven by contractual obligations it assumed and never disclosed to BNEA until the filing of its Opposition.  Indeed, in its Opposition, AtGames has revealed that it entered into a License Support Agreement with Curran (on behalf of the GCC successors-in-interest) on August 16, 2019 premised, in part, on AtGames' representation that "the first shipment of the Licensed Products by AtGames . . . is estimated to occur by October 1, 2019."  Hsiung Decl., Ex. 6 at ¶ 2 (in the contract, "Licensed Products" is defined as certain enumerated products "for commercial use containing the Ms. Pac-Man arcade game").  Further, Exhibit A to the License Support Agreement expressly states that *two* separate Ms. PAC-MAN products would be *ready for release* on October 20, 2019: home arcades (full size) and home arcades (compact size).  *Id*. at Ex. A.  In order to meet that release date, AtGames stated that it expects "the first product shipment" to occur on October 1, 2019, or just *six weeks* after the License Support Agreement was executed.  *Id*. at ¶ 6.

In essence, AtGames asks BNEA and the Court to believe the fantastical claim that it could cram six months of product development, manufacture and distribution into six weeks.  Simple arithmetic, an elementary understanding of manufacturing and distribution processes, and, most

- 6 -

PLAINTIFF'S REPLY MEMO ISO ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED
Case No. 3:19-cv-05898-VC

crucially, the evidence submitted by both parties emphasize that AtGames could not meet the deadlines it set forth in either its correspondence with BNEA's counsel or in its contract with Curran without illicitly developing, producing, and preparing to ship unauthorized Ms. PAC-MAN products well in advance of October 1, 2019. Further, those impending deadlines explain why, despite knowing it lacked a license to Ms. PAC-MAN, AtGames went forward anyway with development and production of the infringing products.

### C.   AtGames Knew Its Use of the Ms. PAC-MAN Property Was Impermissible

AtGames submits a number of declarations and email chains to suggest that BNEA was aware of and actually approved AtGames' use of the Ms. PAC-MAN Property. *See* Hsiung Decl., Exs. 1-4. These submissions prove nothing of the sort, and to the contrary undercut the credibility of any such assertion and establish that any alleged "misunderstanding" AtGames now claims it had to this effect was objectively unreasonable and baseless. *See* Hsiung Decl., Ex. 4 at 4-9.

The disclaimer that appears on the bottom of each and every page of the Merchandise License Proposal Worksheet (Part A), as completed by AtGames on October 15, 2018 for two separate Ms. PAC-MAN product proposals, states as follows in bold lettering:

> "Use of any BNEA trademarks, copyrights, patents, or other intellectual property rights without a long form license agreement fully executed by an authorized representative of BNEA is a violation of our valuable intellectual property rights which we vigorously defend to the fullest extent of the law . . . ." *Id.*

Accordingly, AtGames' assertion that it "understood it had BNEA's approval for its Ms. Pac-Man HDMI Dongle" is ludicrous. *See* Opposition at 5:19-20.

Further, AtGames' multiple references to Shoya Yamazaki's email of October 15, 2018, the same date on which Ping-Kang Hsiung ("Hsiung") submitted the Merchandise License Proposal Worksheet to BNEA, similarly fail to provide a reasonable basis for any alleged mistaken belief on AtGames' part that BNEA had approved AtGames' production of a Ms. PAC-MAN product. *See*, *e.g.*, Opposition at 1:26; 5:21-25; 6:14; *see also* Lundell Supp. Decl. ¶¶ 3, 4. Hsiung, AtGames' longtime CEO, has overseen multiple contracts between AtGames and BNEA over the years. Lundell Decl. ISO Application ¶¶ 7-8. It strains credulity to suggest that on the same day

PLAINTIFF'S REPLY MEMO ISO ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED
Case No. 3:19-cv-05898-VC

Hsiung submitted the proposal worksheets to BNEA, which included six separate instances of a boldfaced admonition that AtGames had no right to use any intellectual property addressed in the worksheet (*e.g.*, Ms. PAC-MAN) absent a fully executed written license agreement, he nonetheless had a good faith belief that BNEA approved of AtGames' Ms. PAC-MAN HDMI dongle. AtGames' statements and arguments to the contrary in its Opposition are without merit and are contrary to the overwhelming and irrefutable evidence before the Court.[10]

In addition, to the extent industry norms apply here – which BNEA disputes given the parties' preexisting contractual relationship – AtGames mischaracterizes how companies behave in the industry. Lundell Supp. Decl. ¶¶ 2, 5. It is simply not the case that licensors permit potential licensees to use and/or incorporate unlicensed intellectual property into proposed products without prior written approval. *Id.* AtGames' assertions to the contrary are wrong.

AtGames' willingness to argue that it understood it had approval for a Ms. PAC-MAN product, despite clear, unambiguous, and repeated evidence stating that no such approval had been given, further underscores why BNEA requires the requested injunction.

### D. AtGames' Proffered Defenses to Its Infringement Are Woefully Insufficient

For the reasons set forth in the Application, BNEA is likely to succeed on the merits of its respective claims for trademark infringement and counterfeiting under the Lanham Act. *See* Application at 6-9. BNEA has, in fact, submitted evidence showing AtGames' use of the exact Ms. PAC-MAN Mark on the Unauthorized Ms. PAC-MAN Products, which alone is dispositive of the consumer confusion issue. *See* Application, Ex. A; Peake Decl., Exs. B & D; *see also* Application at 7 (citing to *Jack in the Box, Inc. v. Mehta*, 2016 WL 3401988, at *8 (N.D. Cal. June 21, 2016)). AtGames does not and cannot overcome the overwhelming evidence and authority establishing the merits of BNEA's trademark infringement and counterfeiting claims.[11]

---

[10] Moreover, even if one were to accept AtGames' implausible assertion that it believed it had BNEA's approval for a Ms. PAC-MAN product, the Opposition makes clear that AtGames' understanding related only to a Ms. PAC-MAN HDMI dongle. Opposition at 5:19-22. Yet, AtGames proceeded to develop and produce Ms. PAC-MAN *home arcades*, not HDMI dongles to BNEA's knowledge.

[11] The cases cited in the Opposition for the proposition that BNEA's showing of a likelihood of confusion only amounts to *de minimis* confusion are inapposite. In each of the cases cited by AtGames, the relevant issue was

- 8 -

PLAINTIFF'S REPLY MEMO ISO ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED
Case No. 3:19-cv-05898-VC

Yet, in the Opposition, AtGames responds to the evidence submitted by BNEA with a blanket assertion that "Plaintiff's Lanham Act claims must fail because it is impossible that AtGames' use of the trademarks could have caused confusion, mistake or deception." Opposition at 12:18-19. AtGames further states that "BNEA has offered no evidence of likely or actual confusion," which is "fatal to BNEA's motion." *Id*. at 12:20. However, in the Application, BNEA cites to authority and submits evidence establishing that "a reasonably prudent marketplace consumer is likely to be confused as to the origin of the good or service bearing the mark." Application at 7 (citing to *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012)). Clearly, and despite AtGames' suggestion to the contrary, the standard for trademark infringement is not whether Curran or Peake Marketing were actually confused by the infringing products and materials AtGames admits it unlawfully sent them. *See* Opposition at 12:21-13:13.[12] The standard, particularly in the context of BNEA's Application seeking to enjoin AtGames from further engaging in unauthorized use of BNEA's Ms. PAC-MAN Property, is whether a consumer, such as GameStop or Walmart who purchase products sold by AtGames (*see* Hsiung Decl.,¶¶ 2-3), is likely to be confused by the conduct at issue. If AtGames is offering to sell products bearing and containing Ms. PAC-MAN intellectual property, which is what AtGames admits it did, then obviously those consumers are going to wrongfully assume that AtGames is authorized to manufacture, promote and sell those products. This is the epitome of infringing activity under the Lanham Act. *See* Application at 6 (citing 15 U.S.C. § 1114(1)(a)).

In addition, AtGames' production of the Unauthorized Ms. PAC-MAN Products is anything but fair use under the Copyright Act. Again, AtGames' unapproved production of the Unauthorized Ms. PAC-MAN Products features exact replicas of the Ms. PAC-MAN characters

---

whether a limited number of instances of actual confusion, amidst numerous non-infringing events, were sufficient to establish a likelihood of confusion. Such cases are readily distinguishable from the facts at issue in this case, and, accordingly, the holdings therein do not speak to BNEA's showing of a likelihood of confusion here.

[12] Contrary to AtGames' assertions in its Opposition, BNEA's trademark infringement claim is also not "based on AtGames' use of the term 'Ms. Pac-Man' in private business discussions . . . to refer to the product itself." Opposition at 14:2-4. AtGames devotes a page-and-a-half of the Opposition to tear down this nominative fair use straw man yet fails to address BNEA's substantive infringement assertions.

- 9 -

PLAINTIFF'S REPLY MEMO ISO ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED
Case No. 3:19-cv-05898-VC

and thus constitutes clear infringement of the Ms. PAC-MAN Copyrights, and is not otherwise permitted under the fair use doctrine. Fair use allows the unlicensed use of copyrighted works in limited circumstances, none of which exist here.[13] Instead, AtGames' use of the Ms. PAC-MAN Copyrights is for a purely *commercial* purpose, which will obviously have an impact on the potential market for the copyrighted works from actual BNEA licensees. These actions fall squarely outside of the enumerated and contemplated legitimate purposes set forth in Section 107 of the Copyright Act and, therefore, do not constitute fair use by any stretch. *See* 17 U.S.C. § 107.

AtGames has admitted to producing three prototypes in anticipation of obtaining a Ms. PAC-MAN license to sell Ms. PAC-MAN products. The assertion that the prototypes have only been shown to a limited number of people does not negate the fact that AtGames (i) used BNEA's proprietary rights in and to the Ms. PAC-MAN Copyrights without permission to produce products intended for marketing and selling to retailers and distributors, and in fact offered them for sale to at least GameStop and Walmart; and (ii) fully intends to proceed with such promotion and sale to retailers if not enjoined from doing so, as evidenced by AtGames opposition to the Application. These actions constitute, and will continue to constitute, blatant infringement not permitted under the fair use doctrine. *See Walker Mfg. v. Hoffmann, Inc.*, 261 F. Supp. 2d 1054, 1067 (N.D. Iowa 2003) ("the *de minimis* doctrine was not meant to cover cases in which . . . the defendant made a concerted effort to copy the design of a competitor for the purpose of producing a marketable product on which the defendant intended to make significant sales.").

### III.   CONCLUSION

For the reasons set forth in the Application and herein, BNEA respectfully requests this Court issue the Preliminary Injunction sought pursuant to the Application.

---

[13] 17 U.S.C. § 107 (stating, in part, that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright," and setting forth the four factors to be considered in determining whether a particular use is a "fair use").

- 10 -

PLAINTIFF'S REPLY MEMO ISO ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED
Case No. 3:19-cv-05898-VC

DATED:  November 5, 2019

Respectfully submitted,

**NIXON PEABODY LLP**

By: */s/ Robert A. Weikert*

Robert A. Weikert (Bar No. 121146)
rweikert@nixonpeabody.com
Andrew H. Winetroub (Bar No. 291847)
awinetroub@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 32nd Floor
San Francisco, California 94111-3600

David L. May (*Appearance Pro Hac Vice*)
dmay@nixonpeabody.com
Jennette W. Psihoules (*Appearance Pro Hac Vice*)
jpsihoules@nixonpeabody.com
NIXON PEABODY LLP
799 9th Street NW
Washington, DC 20001-4501

*Attorneys for Plaintiff*
BANDAI NAMCO Entertainment America Inc.

- 11 -

PLAINTIFF'S REPLY MEMO ISO ORDER TO SHOW CAUSE WHY
A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED
Case No. 3:19-cv-05898-VC